### SIMPSON et al. v. TREAT.

(Circuit Court, S. D. New York. January 5, 1904.)

1. INTERNAL REVENUE—STAMP TAXES—COPIES OF FOREIGN CHARTER PARTIES.

Under the provision of the war revenue act of 1898 (30 Stat. 448 [U. S. Comp. St. 1901, p. 2286]) imposing a stamp tax on charter parties and other papers relating to the charter of a vessel, where charter parties were executed in a foreign country and left there, but copies were made and brought into the United States to be used in their place for the benefit of one or both of the parties, such copies are subject to the tax.

2. SAME—SUIT TO RECOVER—SUFFICIENCY OF COMPLAINT.

In a complaint against a collector of internal revenue to recover the amount of taxes exacted by him from plaintiffs, who were shipping agents, as due, under the war revenue act, on copies of charter parties

in their possession, and alleged by them to have been obtained for the information of themselves and their customers, an allegation that "plaintiffs' said firm were strangers to said charter parties and the matter to which the same related" is not sufficient to show that plaintiffs were not agents or representatives of one or the other of the parties to such instruments, and properly chargeable with the tax.

Action to Recover Internal Revenue Taxes Paid. On demurrer to complaint.

Butler, Notman, Joline & Mynderse, for plaintiffs.

Henry L. Burnett, U. S. Atty., and Charles D. Baker, Asst. U. S. Atty., for defendant.

RAY, District Judge. The complaint alleges the copartnership of the plaintiffs, and the place of business in the city of New York; that defendant was and is collector of internal revenue of the Second District of New York, and an inhabitant of the Southern District of New York. Then:

"Third. That subsequent to the 1st day of July, 1898, and prior to the 13th day of March, 1900, plaintiffs' said firm had in their possession at their place of business one hundred and six copies of charter parties; that the original charter parties, of which said paper writings were copies, were made, signed, and issued at several dates subsequent to the 1st day of July, 1898, wholly without the United States, and retained wholly without the United States in the possession of the foreign brokers through whom they were made; that each of said charter parties was for the transportation of merchandise by a steamer of over 600 tons, and bore internal revenue stamps required by the country where made; that plaintiffs' said firm were strangers to said charter parties and the matter to which the same related, and none of said charter parties have ever been registered, issued, sold, or transferred by or to or for the plaintiffs' said firm, and said copies thereof were obtained by plaintiffs' said firm, in accordance with their practice, for the information of themselves and their customers, and were kept by plaintiffs in a 'charter party book' containing many other copies of charter parties.

"Fourth. That the United States internal revenue agent for the district aforesaid reported to the defendant that the plaintiffs' said firm had incurred a stamp duty of ten dollars ($10) in respect to each of said copies of charter parties, amounting in all to the sum of ten hundred and sixty dollars ($1,060), under the act of Congress of June 13, 1898, 30 Stat. 448, c. 448 [U. S. Comp. St. 1901, p. 2286]. The defendant thereupon, on or about the 12th day of March, 1900, demanded payment of said sum from plaintiffs' said firm as a tax under said act for and in respect to said copies of charter parties, though he never indicated in any way to the plaintiffs on which specific copies of charter parties in said charter party book the said tax was levied; and said defendant further threatened, in case such payment should not be made within ten days thereafter, to employ for the collection thereof the power and authority vested in him by virtue of his office as United States internal revenue collector for the district aforesaid for the collection of the United States internal revenue taxes, and threatened also to collect and compel plaintiffs' said firm to pay other additional sums, by way of penalty and punishment, if said sum of ten hundred and sixty dollars ($1,060) was not paid in accordance with said demand.

"Fifth. That thereupon the plaintiffs' said firm did on or about the 23d day of March, 1900, pay to the defendant said sum of ten hundred and sixty dollars ($1,060) under protest in writing, which said protest was as follows."

The protest is set out in full, and is sufficient, if the copies of charter parties in question were not subject to the tax imposed, and then alleges that no tax was due, and that said papers were not subject to

any tax. The complaint also duly alleges an appeal to the United States Commissioner of Internal Revenue, and the rejection of said appeal. To this complaint the defendant demurs on the ground that the complaint does not state facts sufficient to constitute a cause of action. The broad question involved and presented on the argument is, were these copies of charter parties subject to the stamp tax or duties imposed and paid, or to any tax?

The act of June 13, 1898, c. 448, 30 Stat. 448 [U. S. Comp. St. 1901, p. 2286], being "An act to provide ways and means to meet war expenditures, and for other purposes," in section 6, provides, among other things, as follows:

"Sec. 6. That on and after the first day of July, eighteen hundred and ninety-eight, there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this act, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, shall be written or printed by any person or persons, or party who shall make, sign, or issue the same, or for whose use or benefit the same shall be made, signed, or issued, the several taxes or sums of money set down in figures against the same, respectively, or otherwise specified or set forth in the said schedule. * * *

"Sec. 7. That if any person or persons shall make, sign, or issue, or cause to be made, signed or issued, any instrument, document, or paper of any kind or description whatsoever, without the same being duly stamped for denoting the tax hereby imposed thereon, or without having thereupon an adhesive stamp to denote said tax, such person or persons shall be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine of not more than one hundred dollars, at the discretion of the court, and such instrument, document, or paper, as aforesaid, shall not be competent evidence in any court. * * *

"Sec. 10. That if any person or persons shall make, sign, or issue, or cause to be made, signed, or issued, or shall accept or pay, or cause to be accepted or paid, with design to evade the payment of any stamp tax, any bill of exchange, draft, or order, or promissory note for the payment of money, liable to any of the taxes imposed by this act, without the same being duly stamped, or having thereupon an adhesive stamp for denoting the tax hereby charged thereon, he, she, or they shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding two hundred dollars, at the discretion of the court. * * *

"Sec. 13. That any person or persons who shall register, issue, sell, or transfer, or who shall cause to be issued, registered, sold, or transferred, any instrument, document, or paper of any kind or description whatsoever mentioned in Schedule A of this act, without the same being duly stamped, or having thereupon .an adhesive stamp for denoting the tax chargeable thereon, and canceled in the manner required by law, with intent to evade the provisions of this act, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding fifty dollars, or by imprisonment not exceeding six months, or both, in the discretion of the court; and such instrument, document, or paper, not being stamped according to law, shall be deemed invalid and of no effect. * * *

"Sec. 14. That hereafter no instrument, paper, or document required by law to be stamped, which has been signed or issued without being duly stamped, or with a deficient stamp, nor any copy thereof, shall be recorded or admitted, or used as evidence in any court until a legal stamp or stamps, denoting the amount of tax, shall have been affixed thereto, as prescribed by law; provided, that any bond, debenture, certificate of stock, or certificate of indebtedness issued in any foreign country shall pay the same tax as is required by law on similar instruments when issued, sold, or transferred in the United States; and the party to whom the same is issued, or by whom

it is sold or transferred, shall, before selling or transferring the same, affix thereon the stamp or stamps indicating the tax required. * * *

"Express and Freight: It shall be the duty of every railroad or steamboat company, carrier, express company, or corporation or person whose occupation is to act as such, to issue to the shipper or consignor, or his agent, or person from whom any goods are accepted for transportation, a bill of lading, manifest, or other evidence of receipt and forwarding for each shipment received for carriage and transportation, whether in bulk or in boxes, bales, packages, bundles, or not so inclosed or included; and there shall be duly attached and canceled, as is in this act provided, to each of said bills of lading, manifests, or other memorandum, and to each duplicate thereof, a stamp of the value of one cent. * * *

"Charter Party: Contract or agreement for the charter of any ship, or vessel, or steamer, or any letter, memorandum, or other writing between the captain, master, or owner, or person acting as agent of any ship, or vessel, or steamer, and any other person or persons, for or relating to the charter of such ship, or vessel, or steamer, or any renewal or transfer thereof, if the registered tonnage of such ship, or vessel, or steamer does not exceed three hundred tons, three dollars. Exceeding three hundred tons and not exceeding six hundred tons, five dollars. Exceeding six hundred tons, ten dollars."

"A charter party is a mercantile instrument by which one who would export or import goods engages for the hire of an entire vessel for the purpose at a freight or reward thereby agreed for." 2 Steph. Com. 140. "A lease of a vessel; a species of contract by which the owners of a vessel let her to another person to be used by the latter in transportation for his own account." See 1 Abb. Law Dic. 212.

Evidently it was the purpose of the act of June 13, 1898, to impose the stamp tax or duty on all agreements amounting to a charter party, and on all letters, memoranda, or other writings executed or passing between the captain, master, owner, or agent of a vessel and some other person relating to the hiring of such vessel, or any renewal or transfer of such agreement. Undoubtedly it was intended to impose this tax or stamp duty on all such agreements, etc., whether executed in this or some other country, if intended for use in this country and used here; and if the original, executed abroad, should be kept abroad, and a copy used here in its place, the copy would undoubtedly be subject to the tax to be paid by the person for whose use or benefit such copy was either made, signed, or issued.

The complaint does not disclose the ownership of the vessels chartered, or the residence of the owners, or the residence of the charterers. For anything that appears, these were American vessels, owned by and chartered to American citizens, who simply executed the charter parties abroad, and left them abroad, and paid such tax as the country where same were executed imposed. The plaintiffs were and are steamship and ship agents, and plaintiffs' firm obtained said copies of said charter parties in accordance with their practice, and for the information of themselves and their customers. The complaint alleges that "plaintiffs' said firm were strangers to said charter parties and the matter to which the same related," which means that the plaintiffs' firm was not a party to the same, but does not necessarily mean that plaintiffs' firm was not and is not the agent or representative of one or the other of the parties to the agreements, or that one or the other of the parties to such charter parties are not customers of the

plaintiffs' firm. See "Stranger," 2 Abb. Law Dict. p. 507. It cannot be presumed that this tax or stamp duty was illegally imposed or exacted, and it is incumbent on the plaintiffs to allege such facts as establish that the tax was illegally imposed and exacted. A general' allegation such as is found in the sixth subdivision of the complaint is but a conclusion, and is not sufficient.

It is conceded (1) that the original papers executed abroad were charter parties; (2) that the plaintiffs' firm have copies of the same, which they use in the United States in the same manner they would use the originals; (3) that such originals were executed and are kept abroad, and have not paid the stamp tax or duty imposed by the laws of the United States. It is not alleged that the plaintiffs did not and do not represent one of the parties thereto; neither is it alleged that the copies were not and are not used in this country, for the benefit of one or both of the parties thereto, in place of the originals. The mere fact that those charter parties were executed and left in another sovereignty, and that copies only are used here, cannot relieve the party so using such copies from payment of the tax. Such a construction of the law would seriously impair and in a great measure might destroy its efficiency, or defeat its purpose. It would hardly do to hold that deeds, mortgages, leases, and contracts relating to lands and buildings in the United States can be executed and kept in Canada by citizens of the United States, and copies substituted for use in this country, and the tax in this manner evaded. It is undoubtedly true, as a general proposition, of a charter party as of other instruments on which a stamp tax is imposed by the act, that the tax is to be paid on the original only; but this presupposes that the original may be reached, and that a copy is not substituted and used in place of the original, and made to answer all the purposes of the original. These copies used in place of the original by the plaintiffs' firm were made and issued for the use of the plaintiffs, and the tax was therefore payable by them.

The complaint does not state facts sufficient to constitute a cause of action, and the demurrer is sustained with costs. Plaintiffs may amend the complaint within 20 days on payment of such costs.